**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| RYAN MORRIS, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:24-cv-00782-AAQ |
| KING OAK ENTERPRISES, INC. | * | |
| *Doing business as The Ebony Inn* | | |
| | * | |
| Defendant | | |
| | * | |

**MEMORANDUM OPINION AND ORDER**

This case involves alleged violations of the Fair Labor Standards Act, the Maryland Wage and Hour Law (MWHL), and the Maryland Wage Payment and Collection Law (MWPCL). Though Plaintiff Ryan Morris initially filed her Complaint on behalf of herself and similarly situated individuals, *see* ECF No. 1, she moves for Default Judgment on behalf of only herself, *see* ECF No. 12. Plaintiff seeks repayment of unpaid wages, reimbursement for "house fee" payments she previously made to her employer. Plaintiff also seeks reimbursement for the total loss her car, which was damaged due to the alleged tortious conduct of one of Defendant's employees. Pending before the court is Plaintiff's Motion for Default Judgment. ECF No. 12. For the reasons discussed below, the Motion is granted in part and denied in part.

**BACKGROUND**

According to the Complaint, Plaintiff worked as an exotic dancer at the Ebony Inn Gentlemen's Club (Defendant) from March 2021 until January 20, 2024 (the relevant period).[1]

---

[1] Because the case is currently before the Court on Plaintiff's Motion for Default Judgment, the Court accepts all well-pled allegations, other than those pertaining to damages, as true for the

ECF No. 1 ¶ 31.   Throughout this period, Defendant classified Plaintiff as a non-employee contractor, *id.* ¶ 33, while retaining the authority to fire her, modify her work hours and responsibilities, and set the rate and method of her compensation, *id.* ¶¶ 10-11.   Defendant maintained sign-in and sign-out procedures to keep track of Plaintiff's work hours. *Id.* ¶ 41.   On average, Plaintiff worked at the Ebony Inn around twenty hours per week, *id.* at ¶ 40, generally consisting of three to five shifts, with each shift lasting from four to six hours, *id.* ¶ 37.   During Plaintiff's time at the Ebony Inn, Defendant did not pay Plaintiff any wages for her hours worked, *id.* ¶ 43, and required Plaintiff to pay a per-shift "house fee" ranging from $40 to $70, *id.* ¶ 45.

During one of Plaintiff's shifts at the Ebony Inn in December of 2023, Dorian Abdul Buckler—a manager at the Ebony Inn and Plaintiff's supervisor—drove Plaintiff's car without her permission. *Id.* ¶ 83.   While driving the car for his own personal enjoyment, Buckler was involved in an accident. *Id.*   The resulting damage left Plaintiff unable to use her car. *Id.*   At the time, Buckler possessed a "well-documented criminal record." *Id.*

On March 15, 2024, Plaintiff brought this action seeking payment of unpaid wages, reimbursement of the "house fees," payment for the damages sustained due to loss of her car, liquidated damages and penalties under the FLSA, MWHL, and MWPCL, and attorneys' fees. *Id.* at 18-20.   On March 18, 2024, the court issued a summons to Defendant.   ECF No. 2.   Plaintiff properly served Defendant on May 7, 2024.   ECF No. 8.   Defendant's answer to Plaintiff's Complaint was due on or before May 28, 2024, *id*, but Defendant failed to make an appearance or answer the Complaint.   Subsequently, on May 29, 2024, Plaintiff moved for a Clerk's Entry of

---

purposes of deciding this Motion. *See* Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

Default against Defendant, ECF No. 9, which the Clerk entered on June 6, 2024, ECF No. 10.

Notice of the Clerk's Order was issued to the Defendant.  ECF No. 11.

On July 17, 2024, Plaintiff moved for Default Judgment against the Defendant for the following amounts: (1) $107,448.80[2] in unpaid wages and statutory liquidated damages; (2) $20,000 arising from the conversion of Plaintiff's car, and (3) $9,375.00 in attorneys' fees.  ECF No. 12 at 26-27.  In support, Plaintiff has attached her own sworn affidavit, which details Plaintiff's experience working at the Ebony Inn, ECF No. 12-1, as well as an affidavit declaration from Plaintiff's counsel, Gregg C. Greenberg, in support of Plaintiff's request for reasonable attorneys' fees and costs, ECF No. 12-2.  In response to a request from the Court, Plaintiff also filed Supplemental Briefing and a Supplemental Sworn Affidavit in support of her Motion for Default Judgment. ECF Nos. 14, 14-1.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered by the Clerk of the Court "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear.  Fed. R. Civ. P. 55(b)(1).  The entry of default judgment is a matter within the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)).  Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment

---

[2] Plaintiff's calculation of unpaid wages rely on a minimum wage of $14.00 for the period of January 1, 2024–January 20, 2024, although the Maryland minimum wage during that time was $15.00. Md. Code Ann., Lab. & Empl. § 3-413 (2023).  In calculating damages, the Court will use the $15.00 figure, leading the calculations herein to differ slightly from those Plaintiff presented in her Motion for Default Judgment.

is available when the 'adversary process has been halted because of an essentially unresponsive party,'" *id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421).  Default judgment is proper when a defendant is unresponsive.  *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896–97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pled factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  (citation and internal quotation marks omitted)). The court then must "determine whether these unchallenged factual allegations constitute a legitimate cause of action."  *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010).

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded."  *See, e.g., Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972 at *3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832 at *3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011).  Where a complaint offers only "labels and conclusions or naked assertion[s]

devoid of further factual enhancement," the allegations therein are not well-pled and, consistent with the Court's discretion to grant default judgment, relief based on those allegations should be denied. *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544–45 (citation and internal quotation marks omitted). Rather, a complaint must "show" why a given conclusion is warranted. *Id.* at 545. If, however, the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Agora Fin., LLC*, 725 F. Supp. 2d at 494. The Court may do so without a hearing when "there is an adequate evidentiary basis in the record from which to calculate an award." *Mata v. G.O. Contractors Grp., Ltd.*, No. TDC–14–3287, 2015 WL 6674650, at *3 (D. Md. Oct. 29, 2015); *see* Fed. R. Civ. P. 55(b).

## ANALYSIS

### I.     Jurisdiction and Venue

This Court has original jurisdiction over Plaintiff's Fair Labor Standards Act claim, as it arises under federal law. *See* 28 U.S.C. § 1331. Given that Plaintiff's state law claims—brought under the Maryland Wage Payment and Collection Law and the Maryland Wage and Hour Law— arise under the same common nucleus of operative facts as Plaintiff's FLSA claims, this Court will properly exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a); *see also Reed v. Code 3 Sec. and Prot. Servs., Inc.*, No. AW-09-1162, 2009 WL 5177283, at *3 (D. Md. Dec. 18, 2009) (exercising supplemental jurisdiction over the MWPCL and MWHL claims accompanying plaintiffs' FLSA claim).

Venue is also proper in this judicial district because Defendant is incorporated in Maryland, ECF No. 1 ¶ 6, Defendant's principal place of business—the Ebony Inn—is in Prince George's County, Maryland, *id.* ¶ 6, and the events giving rise to this claim occurred at the Ebony Inn in Prince George's County, Maryland, *id.* ¶¶ 7-14. *See* 28 U.S.C. § 1391(b)(1)-(2).

II.    **Liability**

A.  **Counts I & II – FLSA & MWHL**

Plaintiff alleges that Defendant violated the FLSA and MWHL by (1) failing to pay her at least the minimum wage for her hours worked and (2) charging mandatory "house fee" kickbacks. ECF No. 1 ¶¶ 63-64, 70-71.  "The FLSA requires that employers pay nonexempt employees at least the federal minimum wage for all hours worked." *Quickley v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12–321, 2012 WL 4069757, at *4 (D. Md. Sept. 14, 2012); *see also* 29 U.S.C. § 206(a)(1).  As the "state parallel" to the FLSA, the MWHL requires employers to pay employees at least the Maryland minimum wage, "and the requirements for pleading a claim under the MWHL 'mirror those of the federal law.'" *Quickley*, 2012 WL 4069757, at *6 (quoting *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012)); Md. Code Ann., Lab. & Empl. § 3-413(b). Consequently, a plaintiff's MWHL claim "stands or falls" on the success of her FLSA claim. *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).  Wages under the FLSA and MWHL must be paid "free and clear," and may not be subject to kickbacks made directly or indirectly to the employer. *Butler v. PP&G, Inc.*, No. 20-3084-JRR, 2023 WL 3580374, at *6 (D. Md. May 22, 2023); 29 C.F.R. § 531.35.

"A necessary precondition to establishing liability under the FLSA and the MWHL is showing that an employment relationship existed between the parties." *Falaiye v. CCA Acad. Res., LLC*, No. PX-16-2887, 2017 WL 4098740, at *3 (D. Md. Sept. 14, 2017).  Plaintiff alleges that, during the relevant period, Defendant misclassified her as an independent contractor when she was Defendant's employee and Defendant was her employer. ECF No. 1 ¶ 33, 35.  The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and to "employ" as "to suffer or permit to work," *id.* § 203(g).  While these definitions are already broad, they

should also be liberally construed in line with FLSA's "'remedial and humanitarian' goals."
*McFeeley v. Jackson St. Ent., LLC.*, 825 F.3d 235, 241 (4th Cir. 2016) (quoting *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999)). *See also Schilling v. Schmidt Baking Co.*, Inc., 876 F.3d 596 (4th Cir. 2017) ("Consistent with that [remedial] purpose, we construe the FLSA liberally, recognizing that broad coverage is essential to accomplish the statute's goals." (citation and internal quotation marks omitted)).

To determine whether an individual is an employee under the FLSA, courts apply the "economic reality" test.[3] *Acevedo v. McCalla*, No. MJM-22-1157, 2023 WL 1070436, at *3-*4 (D. Md. Jan. 27, 2023). Under this test, courts consider six factors the U.S. Supreme Court identified in *United States v. Silk*, 331 U.S. 704 (1947), and the Fourth Circuit adopted in *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 304-05 (4th Cir. 2006):

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304-05. These same six factors are used to determine employee status under the MWHL. *McFeeley v. Jackson St. Ent., LLC*, 47 F. Supp. 3d 260, 267 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016). The factors are "designed to capture the economic realities of the

---

[3] The "economic reality" test used to determine whether an individual is an "employee" under the FLSA is different than the "economic reality" test used to determine whether a person is an "employer." *Acevedo*, 2023 WL 1070436, at *4; *McFeeley*, 47 F. Supp. 3d at 274 n.8. Here, Plaintiff has alleged that Defendant misclassified her as a non-employee contractor when she was, in fact, an employee. ECF No. 1 ¶¶ 33, 35. Thus, the issue to be assessed when determining whether an employer-employee relationship existed between Plaintiff and Defendant is whether Plaintiff was an employee.

relationship between the worker and the putative employer," and "no single factor is dispositive." *Schultz*, 466 F.3d at 305. Rather, "all six are part of the totality of the circumstances presented," *McFeeley*, 825 F.3d at 241. A plaintiff is not "strictly obligated to plead facts relevant to every factor of the *Silk/Schultz* test," but must plead facts sufficient to "raise his entitlement to relief under the FLSA 'above the speculative level.'" *Acevedo*, 2023 WL 1070436, at *5 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"[T]he vast majority of the district courts (including those within the Fourth Circuit) to have considered whether exotic dancers are employees or independent contractors, have found them to be employees." *Degidio v. Crazy Horse Saloon and Rest., Inc.*, No. 13-CV-02136-BHH, 2015 WL 5834280, at *7 (D.S.C. Sept. 30, 2015) (citing cases). Regarding the first factor, Plaintiff has alleged that (1) she was required to sign in and sign out upon arrival and departure, ECF No. 1 ¶ 41, (2) she was required to pay a "house fee" for each shift worked, *id.* ¶ 45, (3) Defendant retained control over her pay, responsibilities, and work hours, *id.* ¶ 10, and (4) Defendant controlled advertising and the sale of food and beverages at her workplace, *id.* ¶¶ 15, 18. Based on the facts alleged in Plaintiff's Complaint, the degree of control exercised over Plaintiff's work weighs in favor of an employment relationship. *See McFeeley*, 825 F.3d at 241-42 (finding that the extent of control defendant exercised over plaintiff weighed in favor of plaintiff's employee status when the facts indicated that: (1) dancers were required to sign in upon arriving, (2) dancers were required to pay a "tip-in" fee, (3) the club dictated the dancers' work schedule, and (4) the club managed the workplace atmosphere by making decisions regarding advertising and the types of food and beverages sold). Plaintiff has also alleged facts regarding the fifth and sixth factors that weigh in favor of her status as an employee. Specifically, Plaintiff has alleged that her employment with defendant was "ongoing and at-will and not *ad hoc* and/or limited to a discrete

time or special assignment," ECF No. 1 ¶ 12, and that the services she rendered were the "primary purpose" for which Defendant operated the Ebony Inn, *id.* ¶ 13.  Plaintiff has not alleged facts specifically relating to the second, third, and fourth factors.  However, as noted above, a plaintiff need not plead facts relevant to every *Silk/Schultz* factor.  *Acevedo*, 2023 WL 1070436, at *5.  The allegations in Plaintiff's Complaint sufficiently "raise [her] entitlement to relief under the FLSA 'above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  As such, Plaintiff has plausibly alleged that she acted as Defendant's employee under the FLSA and MWHL.

Since Plaintiff has sufficiently established that she was Defendant's employee, the Court must next determine whether Defendant failed to pay Plaintiff the minimum wage the FLSA and MWHL require.  Plaintiff alleges that she worked, on average, twenty hours per week at the Ebony Inn throughout the relevant period.  ECF No. 1 ¶ 40.  She also alleges that, during that time, the Ebony Inn did not pay her any wages, *id.* ¶ 43, and, in fact, required her to pay a "house fee" ranging from $40 to $70 per shift, *id.* ¶ 45.  Accordingly, the Court finds that Defendant violated 29 U.S.C. § 206(a)(1) and Md. Code Ann., Lab. & Empl. § 3–413(b), and is liable to Plaintiff under the FLSA and MWHL.  The Court grants Plaintiff's Motion for Default Judgment as to Counts I and II.

### B.  Count III - MWPCL

Plaintiff's MWPCL claim is similar to her FLSA and MWHL claims.  Plaintiff alleges that Defendant violated the MWPCL by (1) "failing to fully and timely compensate Plaintiff . . . all wages earned and due" for her hours worked at the Ebony Inn and (2) charging Plaintiff the mandatory "house fee."  ECF No. 1 ¶¶ 77-78.  "The MWPCL provides that employers 'shall pay each employee at least once in every 2 weeks or twice in each month' . . . 'and shall pay the employee all wages due upon termination.'"  *Falaiye*, 2017 WL 4098740 (quoting Md. Code Ann.,

Lab. & Empl. §§ 3-502(a)(1)(ii), 3-505) (citation omitted).  Additionally, "under the MWPCL, '[a]n employer may not make a deduction from the wage of an employee' [except] under certain conditions." *Chavez v. Besie's Corp.*, No. GJH-14-1338, 2014 WL 5298032, at *2 (quoting Md. Code Ann., Lab. & Empl. § 3-503).  While the MWHL provides a wage baseline, the MWPCL "governs the timing of wage payments." *Acevedo*, 2023 WL 1070436, at *5.  Together, the two statutes "allow employees to recover unlawfully withheld wages from their employer, and provide an employee with two avenues to do so." *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625 (Md. 2014).

"Similar to the FLSA and the MWHL, the MWPCL requires that Plaintiff demonstrate the existence of an employment relationship between the parties." *Falaiye*, 2017 WL 4098740, at *5. To assess whether such a relationship exists, "courts in Maryland and this District have applied the economic-reality test to claims arising under the MWPCL." *Rollins v. Rollins Trucking, LLC*, No. JKB-15-3312, 2016 WL 81510, at *4 (D. Md. Jan. 7, 2016).  As such, when the issue is whether an individual is an employee, courts employ the same six-factor *Silk/Schultz* test outlined above.  *See Acevedo*, 2023 WL 1070436, at *6 ("When the employer-employee relationship needed to assert a claim for unpaid wages under the MWHL or MWPCL is under scrutiny, courts apply the six-factor economic reality test used in FLSA cases to determine whether the plaintiff was an 'employee' within the meaning of the Maryland statutes."); *Butler v. PP & G, Inc.*, No. WMN-13-430, 2013 WL 4026983, at *4 (D. Md. Aug. 6, 2013) (applying the six-factor employee economic reality test under the MWPCL); *Holden v. Bwell Healthcare, Inc.,* No. BPG-19-760, 2021 WL 5827898, at *5 (D. Md. Dec. 7, 2021) (stating "while the factors used to determine whether a worker is an employee under the MWPCL may vary, it is clear that the economic reality test applies" before finding that plaintiffs were employees under the MWPCL because the court

had already found them to be employees under the six-factor FLSA assessment). Given that the test is the same, Plaintiff has established that she was Defendant's employee under the MWPCL.

As Plaintiff has established the necessary employment relationship for liability under the MWPCL, the Court must next assess whether Defendant violated the MWPCL in its payment of Plaintiff. Plaintiff alleges that, during the relevant period, Defendant did not pay her any wages and charged her a per-shift "house fee." ECF No. 1 ¶¶ 43, 45. This clearly contravenes the twice-per-month payments the MWPCL requires. Thus, Plaintiff has established that Defendant violated the statute and is liable to Plaintiff under the MWPLC. Accordingly, the Court grants Plaintiff's Motion for Default Judgment as to Count III.

### C. Count IV – Conversion

Plaintiff alleges that Defendant is liable under a theory of *respondeat superior* for Buckler's conversion of her car. ECF No. 1 ¶¶ 83-87. Under Maryland law, "[t]o establish conversion, a plaintiff must show: '1) plaintiff's right to possess the property; and (2) defendant's intentional taking of the property without authority or permission.'" *Vongohren v. Citimortgage, Inc.*, No. JFM-14-3549, 2016 WL 739070, at *6 (D. Md. Feb. 25, 2016) (quoting *Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D. Md. 2000) *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 5 F. App'x 287 (4th Cir. 2001)). Plaintiff has alleged that the car in question was hers and that Buckler, without Plaintiff's permission, took and crashed the car. ECF No. 1 ¶ 83. As such, she has sufficiently alleged that Buckler committed the intentional tort of conversion.

However, to hold an employer liable for torts committed by an employee under the doctrine of *respondeat superior*, the employee must have been "acting within the scope of his employment." *Jordan v. W. Distrib. Co.*, 286 F. Supp. 2d 545, 548 (D. Md. 2003), *aff'd*, 135 Fed. Appx. 582 (4th Cir. 2005) (unpublished) (quoting *Balt. Police Dep't v. Cherkes*, 780 A.2d 410,

439 (Md. 2001)).  An act is within the scope of employment "when the conduct is in furtherance of the business of the employer and is authorized by the employer." *Jones v. Fam. Health Ctrs. of Balt., Inc.*, 135 F. Supp. 3d 372, 382 (D. Md. 2015) (quoting *Tall v. Bd. of Sch. Comm'rs*, 706 A.2d 659, 667 (Md. Ct. Spec. App. 1998)).  Maryland courts have held that, "particularly when an employee has committed an intentional tort," an act is outside the scope of employment "'where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, of where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality.'" *Jordan*, 286 F. Supp. 2d at 548 (quoting *Sawyer v. Humphries*, 587 A.2d 467, 471 (Md. 1991)).  A tortfeasor's use of materials that he has access to through his employment in the commission of a tort does not, on its own, prove that the tort was committed in the scope of his employment.  *See Jordan*, 286 F. Supp. 2d at 549-50 (holding that the fact that defendants carried guns and drove trucks as part of their work duties was not sufficient to find that tortious conduct involving those guns and trucks was within the scope of defendants' employment).

Plaintiff has not sufficiently alleged that Buckler was acting within the scope of his employment when he took possession of Plaintiff's car.  While she claims that, "Buckler was working . . . within the scope of his employment with Defendant," when he took and crashed her car, ECF No. 1 ¶ 88, Plaintiff has not alleged any facts suggesting that Bucker's act of stealing and crashing her car was "in furtherance of the business of the employer" or "authorized by the employer." *Jordan*, 286 F. Supp. 2d at 548 (quoting *Cherkes*, 780 A.2d at 439).  Rather, Plaintiff states in her Complaint that Buckler took Plaintiff's car "away from the Club for his personal use and enjoyment."  ECF No. 1 ¶ 83.  She notes that the act took place while Buckler was serving as her manager and supervisor, ECF No. 1 ¶ 84, but this is not sufficient to establish that a tort was

12

within the scope of employment for the purposes of an intentional tort. *See Jordan*, 286 F. Supp. 2d at 548 (noting that intentional torts not furthering the employer's business and, instead, furthering the employee's own interests are outside the scope of employment even if during normal duty hours).  Plaintiff also alleges that Buckler had access to her car keys solely because of his employment with Defendant.  ECF No. 1 ¶ 85.  However, alleging that a tortfeasor's employment gave him access to a necessary component of the tort is not adequate to allege that a tort was committed in furtherance of his employment.  *See Jordan*, 286 F. Supp. 2d at 549-50.

Lastly, Plaintiff avers that "Defendant engaged in, authorized, and ratified the wrongful conduct of Buckler."  ECF No. 1 ¶ 86.  However, Plaintiff alleges no facts indicating that Defendant authorized Buckler's actions, nor does she plead any facts that would support such an inference.  As such, Plaintiff's statement that "Buckler was working . . . within the scope of his employment with Defendant," *id.* ¶ 88, amounts to a legal conclusion that is insufficient to plausibly state a claim for relief.  *See, e.g., Victoria Select Ins. Co. v. R&G Transportation*, No. 16CV624, 2017 WL 5158684, at *4 (E.D. Va. Sept. 7, 2017) (motion for default judgment); *Jordan*, 286 F. Supp. 2d at 548-50 (motion to dismiss).  Accordingly, Plaintiff's Motion for Default Judgment as to Count IV is denied.

### D.  Count V – Negligent Retention and/or Supervision

Finally, Plaintiff claims that Defendant was negligent in its retention and supervision of Buckler.  ECF No. 1 ¶ 91.  To establish a claim for negligent supervision or retention, a Plaintiff must show "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries."  *Karn v. PTS of*

*Am., LLC*, 590 F. Supp. 3d 780, 806 (D. Md. 2022) (quoting *Jarvis v. Securitas Sec. Servs. USA, Inc.*, No. 11-cv-00654-AW, 2012 WL 527597, at *5 (D. Md. Feb. 16, 2012)).  When assessing a claim that an employer negligently hired, retained, or supervised an employee who committed an intentional tort, courts must specifically look to the foreseeability of the harm, or "whether the employer knew or should have known that the individual was potentially dangerous." *Garwood v. Walmart, Inc.*, No. SAG-22-1029, 2023 WL 8529122, at *9 (D. Md. Dec. 8, 2023) (quoting *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978)).  "[E]ven where the employer knows of a criminal record and still hires the employee, this does not automatically make out a *prima facie* case of negligent hiring [or retention or supervision].  Instead, it depends upon the nature of the criminal record and the surrounding circumstances." *Evans*, 395 A.2d at 484 n.4.

Plaintiff has pled facts addressing the first element—an employment relationship between Buckler and Defendant—but fails to provide sufficient factual assertions regarding the second and third elements.  Plaintiff alleges that "Defendant was negligent in retaining and supervising Buckler, an employee Defendant had prior knowledge to have a well-documented criminal record who Defendant knew or should have known was prone to criminal activity including, but not limited to, theft."  ECF No. 1 ¶ 91.  Plaintiff relies exclusively on Buckler's "well-documented criminal record," in support of both Buckler's incompetence and the fact that Defendant knew of Buckler's incompetence.  ECF No. 1 ¶ 93 ("Defendant was aware or should have been aware, through a reasonable investigation under the circumstances, that Buckler was [an] unfit employee prone to perpetrating criminal acts.").

While Plaintiff generally refers to Buckler's criminal record several times, she alleges no specifics as to Buckler's alleged inadequacy.  The Complaint generally refers to (1) Buckler's "well-documented criminal record," ECF No. 1 ¶ 91, (2) the fact that Buckler was "prone to

14

perpetrating criminal acts when not closely supervised," *id.* ¶ 93, (3) "Buckler's propensity for committing property theft," *id.* ¶ 94, and (4) Buckler's "criminal propensities," *id.* ¶ 95.  The Complaint does not, for example, include what offenses make up Buckler's "well-documented criminal record," describe why any previous offenses would be relevant to the position in which he worked, or allege any facts supporting the allegation that Buckler had a "propensity" for committing property theft when not closely supervised.  A plaintiff's allegations need not address each of the aforementioned or be robust at this stage of the proceedings, but they must do more than allege the defendant hired an individual with a criminal history.

Additionally, for the same reason, Plaintiff has not sufficiently alleged that Defendant knew that Buckler was unsuitable for his position.  Plaintiff, for example, does not allege that Bucker committed theft or any other acts of misconduct at the Ebony Inn prior to the instance that forms the basis for this case.  Rather, again, she bases her claim solely on Buckler's criminal history.  Accordingly, Plaintiff has not sufficiently pled Defendant's liability for negligently retaining or supervising Buckler.  As a result, Plaintiff's Motion for Default Judgment as to Count V is denied.

### III.    Damages

If a plaintiff pleads facts sufficient for the Court to find liability, the Court turns to damages. *Walsh v. Yost*, No. 20-cv-00449-PX, 2022 WL 9362277, at *2 (D. Md. Oct. 14, 2022).  Damages are limited to what is requested in the Complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  However, "to calculate damages, 'the Court . . . may rely on affidavits or other evidentiary documents in the record.'" *Paige v. CD#15CL2001, Inc.*, No. PWG-15-3691, 2017 WL 193499, at *5 (D. Md. Jan. 18, 2017) (quoting *Quiroz v. Wilhelm Commercial Builders, Inc.*, No. WGC-10-2016, 2011 WL

5826677, at *2 (D. Md. Nov. 17, 2011)).  Additionally, "the Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Lopez v. Lawns 'R' Us*, No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008).

### A. Actual Damages

Though Plaintiff brought her suit pursuant to the FLSA, MWPCL, and the MWHL, she may only recover under one theory of liability.  *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 333 (1980).  Plaintiff has elected to recover under Maryland law—either the MWHL or MWPCL—rather than the FLSA because of the three-year statute of limitations.  ECF No 12 at 18.  *See also* Md. Code Ann. Cts. & Jud. Proc. § 5-101; *Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 330871, at *13 (D. Md. Jan. 25, 2019).  As such, the Court will assess the damages owed under the MWHL and MWPCL.  In calculating the amount of unpaid minimum wages owed in this case, it is appropriate to use the non-tipped Maryland minimum wage.  The MWHL allows employers to pay a lower wage—$3.63 per hour—to some tipped employees.  Md. Code Ann., Lab & Empl. § 3-419(a)-(c).  However, for an employer to take advantage of this tip credit, "an employee must (1) be 'in an occupation in which the employee customarily and regularly receives more than $30 each month in tips'; (2) have 'been informed by the employer about the provisions of this section'; and (3) have 'kept all of the tips [except those contributed to a lawful tip pool] that the employee received.'"  *Butler v. PP&G, Inc*., No. 20-3084-JRR, 2023 WL 3580374, at *6 (D. Md. May 22, 2023) (quoting Md. Code Ann., Lab & Empl. § 3-419(a)).  Notice from the employer is vital: "Employees who receive tips, but whose wages were unlawfully withheld and who did not receive tip credit notice, are entitled to recover unpaid minimum wage at the rates described in the

MWHL, Md. Code Ann., Lab. & Empl. § 3-413(c)(1), regardless of whether they actually received and kept tips earned." *Butler*, 2023 WL 3580374, at *6.

In addition to unpaid hourly wages, Plaintiff's wages under the MWHL and MWPCL also include the amounts Plaintiff paid to Defendant via the mandatory per-shift "house fee." *See Butler*, 2023 WL 3580374, at *7-*8 (calculating house fees as wages under the FLSA and MWHL before holding that the same amounts were recoverable under the MWPCL). "The FLSA and, consequently, the MWHL include a long-standing requirement that '[a]n employee's wages must be free and clear,' and an employer violates the FLSA where kickbacks 'directly or indirectly to the employer' . . . reduce the employee's compensation below the minimum wage." *Butler*, 2023 WL 3580374, at *6 (quoting *Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 717 (D.S.C. 2015)). *See also* 29 C.F.R. § 531.35. Numerous courts have held that "house fees" like the one Plaintiff paid are "recoverable in an FLSA action, and the same logic would apply to an MWHL action" and an MWPCL action. *Id.* at *7-*8 (citing cases).

Plaintiff was never given notice of the tip credit, ECF No. 14-1 ¶ 10, and Defendant withheld all Plaintiff's wages, ECF No. 14-1 ¶ 5. Accordingly, Defendant cannot take advantage of the tip credit and must pay Plaintiff the full Maryland minimum wage for her hours worked. During the relevant period, the Maryland state minimum wage was $11.75 per hour in 2021, $12.50 per hour in 2022, $13.25 per hour in 2023, and $15.00 per hour in 2024. Md. Code Ann., Lab. & Empl. § 3-413 (2019) (amended to reflect accurate 2024 wage in 2023). Plaintiff has declared that, from March 2021 until January 20, 2024, she worked approximately 80% of the available work weeks, ECF No. 12-1 ¶ 24, and that, during those weeks, she worked an average of three shifts totaling fifteen hours per week, *id.* ¶¶ 20, 23. Based on these allegations, Plaintiff worked a total of 348 shifts, including 480 hours at the $11.75 minimum wage, 615 hours at the

$12.50 minimum wage, 615 hours at the $13.25 minimum wage, and 30 hours at the $15.00 minimum wage.  This results in a total of $21,926.25 in hourly wages owed.  Additionally, Plaintiff paid the mandatory $40 "house fee" at each of her 348 shifts, resulting in an additional $13,920 recoverable as wages.  Accordingly, Plaintiff is entitled to $35,846.25 in unpaid wages under the MWHL and MWPCL.

### B. Enhanced Damages

Plaintiff also seeks treble damages under the MWPCL, or alternatively, double damages under the MWHL.  ECF No. 12 at 18 n.5.  Both statutes permit enhanced damages, which "serve the dual purpose of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification."  *Lopez*, 2008 WL 2227353, at *4.  The MWHL allows for liquidated damages amounting to double damages, while the MWPCL allows for treble damages when "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as the result of a bona fide dispute."  *Butler*, 2023 WL 3580374, at *9 (quoting Md. Code Ann., Lab. & Empl. § 3-507.2(b)).  In this District, it has become "customary" to award double damages under the MWHL rather than treble damages under the MWPCL when (1) the defendant offers no evidence of a bona fide dispute that would make liquidated damages inappropriate, but (2) the plaintiff offers no evidence of consequential damages suffered because of the underpayments.  *Fiallos v. Hamzah Slaughter House*, LLC, No. 20-cv-03577-JMC, 2022 WL 16540001, at *7 (D. Md. Oct. 28, 2022) (citing *Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012)).  *See also Butler*, 2023 WL 3580374, at *9.

There is no evidence, or even argument, that Defendant withheld Plaintiff's wages because of a bona fide dispute; thus, a punitive premium is appropriate. *Lopez*, 2008 WL 2227353, at *4. However, Plaintiff has not provided sufficient evidence of consequential damages to merit treble damages. Plaintiff asserts that, because of Defendant's failure to pay wages, Plaintiff "incur[ed] high-interest credit card debt to cover the necessities of life" and experienced "associated stress and anxiety." ECF No. 12-1 ¶ 35. Yet, the record offers no evidence regarding the amount of debt Plaintiff incurred, what expenses resulted in the debt, and whether the wages Defendant owed would have covered them. Given the minimal evidence supporting Plaintiff's consequential damages, the Court does not find that treble damages under the MWPCL are appropriate. Accordingly, it will instead award liquidated damages under the MWHL. *See*, *e.g.*, *Butler*, 2023 WL 3580374 at *9 (awarding double, not treble, damages when Plaintiffs failed to sufficiently connect alleged financial setbacks to the underpayment of wages); *Fiallos*, 2022 WL 16540001, at *8 (awarding double damages because Plaintiff offered no evidence of consequential damages suffered because of underpayments); *Lopez*, 2008 WL 2227353 at *4 (same); *Castillo v. D & P Prof. Services*, Inc., No. DKC-14-1992, 2015 WL 4068531, at *7 (D. Md. July 2, 2015) (same); *Clancy*, 2012 WL 5409733 at *8 (awarding double, rather than treble, damages when the costs incurred by Plaintiff were unforeseeable and too small to "warrant" such a significant increase in damages). As such, Plaintiff is entitled to $71,692.50 in total damages under the MWHL.

### C. Attorney's Fees

Plaintiff also seeks attorneys' fees. Both the MWHL and MWPCL provide that the Court may award reasonable attorneys' fees and costs to an employee. *See* Md. Code Ann., Lab. & Empl. §§ 3-427(d), 3-507(b)(1). *See also Paige*, 2017 WL 193499, at *6; *Lopez*, 2008 WL 2227353, at *5. In a request for attorneys' fees, "Plaintiff must provide all documentation

necessary to make a lodestar determination, including but not limited to: (1) declarations establishing the hours expended by counsel, broken down for each task; and (2) support for the reasonableness of counsel's hourly rate." *Castillo*, 2015 WL 4068531, at *7.   In addition to attorneys' fees, the MWHL and MWPCL provide for the recovery of costs, *see* Md. Code Ann., Lab. & Empl. §§ 3-427(d), 3-507(b)(1), which include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Lopez*, 2008 WL 2227353, at *7 (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988)).

Plaintiff has requested $9,375 in attorneys' fees and costs.   She has provided adequate documentation for this request, including her counsel's affidavit outlining his hours, tasks, litigation costs, and total bill.  ECF No. 12-2.  Additionally, Plaintiff's counsel notes in his affidavit that his typical out-of-pocket billing rate is $450 per hour, but he has lowered the rate to $425 per hour in his representation of Plaintiff to comply with Appendix B, Section 3 of the Local Rules, which provides guidelines for hourly rates for attorneys' fees awards.   The Court finds Mr. Greenberg's rate of $425 to be reasonable.  *See Lopez,* 2008 WL 2227353 at *6 (finding an hourly rate at the top of the bracket set forth in the Local Rules to be reasonable).  Accordingly, the Court awards Plaintiff an additional $9,375 in attorney's fees and costs.

## IV.     Conclusion

For the aforementioned reasons, Plaintiff's Motion for Default Judgment shall be granted in part and denied in part.   It shall be granted as to Counts I, II, and III, and denied as to Counts IV and V.  Plaintiff's Motion for Default Judgment as to Counts I, II, and III shall be granted in the amount of $81,067.50.

Date:   October 11, 2024

/s/
U.S. Magistrate Judge
Ajmel A. Quereshi